**IN THE UNITED STATES DISTRICT COURT**

**FILED**

UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

**FOR THE DISTRICT OF NEW MEXICO**

OCT 26 2005

CONNIE GABALDON,

MATTHEW J. DYKMAN
CLERK

   **Plaintiff,**

vs.

**No. CV 05-363 LCS**

JO ANNE B. BARNHART,
Commissioner of Social Security,

   **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Plaintiff's Motion to Reverse or Remand

Administrative Agency Decision filed July 28, 2005. (Doc. 9.) The Commissioner of Social

Security issued a final decision denying Plaintiff's application for Social Security Disability

Insurance ("SSDI") and Supplemental Security Income ("SSI") on February 1, 2005. (R. at 7-

11.) This matter comes before this Court pursuant to 28 U.S.C. § 636(c). The United States

Magistrate Judge, having meticulously considered the Motion, briefs, administrative record, and

applicable law, finds that this Motion is well-taken and should be **GRANTED** and this case is

REMANDED to the Commissioner of Social Security for further proceedings consistent with this

Memorandum Opinion and Order.

### I.  STANDARD OF REVIEW

The standard of review in a Social Security appeal is whether the Commissioner's final

decision is supported by substantial evidence and whether she applied the correct legal standards.

*Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).

"Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied



by such relevant evidence as a reasonable mind might accept to support the conclusion." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988) (quotation marks and citations omitted). The decision of an Administrative Law Judge ("A.L.J.") is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *Id.* at 805 (citation omitted).

In order to qualify for disability insurance benefits or supplemental security income, "a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of [at least] twelve months which prevents the claimant from engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)). The Secretary has established a five step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See Gatson v. Bowen*, 838 F.2d 442, 448-449 (10th Cir. 1988).

## II.    PROCEDURAL HISTORY

Plaintiff, now fifty-three years old, submitted a claim for Social Security Disability

2

Insurance benefits on December 13, 2001 and protectively filed an application for Supplemental

Security Income payments on September 12, 2002. (R. at 22.)  Plaintiff alleged her disability

began on July 1, 2000 due to various physical and mental disorders including chronic pain, severe

depression, and bipolar disorder.  (R. at 89, 92.)  Plaintiff has a high school education and has

worked as a health care worker, a claims processor, a cook, and a waitress prior to the alleged

onset of her disability.  (R. at 93, 96.)

The Social Security Administration denied Plaintiff's claims both initially and at the

reconsideration level.  (R. at 51-54, 57-60.)  Plaintiff retained Representative Michael Liebman

(R. at 38) and appealed the denial of her application on February 21, 2003 by filing a Request for

Hearing by Administrative Law Judge.  (R. at 61-62.)  On March 18, 2003, A.L.J. Kathleen H.

Switzer issued a fully favorable decision, noting that a hearing would be unnecessary with the

documentary evidence available.  (R. at 45.)

A.L.J. Switzer analyzed Plaintiff's claim in accordance with the sequential analysis set

forth in 20 C.F.R. § 404.1520(a)-(f).  (R. at 45-50.)  At step one of the sequential evaluation, the

A.L.J. found that Ms. Gabaldon had not engaged in substantial gainful activity since the alleged

onset date of disability in 2000.  (R. at 45.)  At steps two and three, the A.L.J. found that

Plaintiff's myofascial pain, major depression, and panic attacks were "severe" within the meaning

of 20 C.F.R. §§ 404.1421 and 416.921.  (*Id.*)  The A.L.J. determined, however, that Plaintiff's

overall condition had not met or equaled in severity any disorder described in the Listing of

Impairments, Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599.  (R. at 46.)  At steps four and

five, the A.L.J. assessed Plaintiff's Residual Functional Capacity ("RFC") and determined that Ms.

Gabaldon had "a substantial loss of ability to meet the demands of basic work related activities on

a sustained basis," that she would not be able to perform her past relevant work nor would the issue of transferability of skills be material, and that there were not a significant number of jobs in the national economy Plaintiff would be able to perform. (R. at 46-49.) Accordingly, the A.L.J. concluded that a finding of disability was supported by Social Security Rulings 96-8 and 96-9p. (R. at 48.) Further, the A.L.J. noted that Plaintiff's allegations were both credible and consistent with the medical evidence of record. (R. at 48-49.)

Shortly after A.L.J. Switzer's decision, the Director of the Division of Disability Quality Operations ("DDQO") referred Ms. Gabaldon's case to the Appeals Council for own-motion review. (R. at 65-69.) In the report, the DDQO reviewers noted that there was no evidence of ongoing treatment for Plaintiff's claimed physical impairments for approximately two of the years since the alleged onset of her disability. (R. at 66.) They also concluded that the medical opinions on Plaintiff's impairments provided by Drs. Kravitz, Gzaskow, and Borrell were not supported by clinical findings, and primarily relied instead on the findings of Dr. Esparza. (R. at 66-67.) Further, due to the few objective findings that supported Plaintiff's subjective complaints of pain and Post Traumatic Stress Disorder ("PTSD"), and because of Ms. Gabaldon's own reports of her daily activities, the reviewers determined that her "allegations regarding the disabling effects of her impairments [were] not fully credible." (R. at 67.)

The DDQO reviewers, based on a review of the records and the A.L.J.'s decision, made the following conclusions: 1) Plaintiff had the RFC to perform medium unskilled work; 2) she is not disabled based on the framework of grid rule 203.22; 3) per Social Security Ruling ("SSR") 96-2p, the A.L.J. did not explain the weight given to a treating source opinion; 4) per SSR 96-7p, the A.L.J. did not explain why she found the Plaintiff credible; 5) per SSR 96-8p and SSR 96-9p,

the A.L.J. "did not describe function-by-function the maximum amount of each work-related"

activity Plaintiff could perform, nor did the A.L.J. provide "limitations based on an RFC for less

than sedentary work"; and 6) per 96-5p, the A.L.J. "ignored a [treating source opinion] on an

issue reserved to the Commissioner."[1]  (R. at 67-68.)

The Appeals Council notified Ms. Gabaldon that it intended to review A.L.J. Switzer's

opinion on its own motion.  (R. at 70-73.)  Plaintiff submitted written arguments supporting

A.L.J. Switzer's decision and thirteen additional pages of medical records to the Appeals Council

for their consideration.[2]  (R. at 74-76.)  Nevertheless, the Appeals Council decided to remand the

matter to an A.L.J. on the basis that the evidence of record did not support a finding of disability.

(R. at 77-81.)  The Appeals Council found that Ms. Gabaldon had the capacity for a limited range

of medium work, that she did not have the "multiple areas of moderate mental limitations found

by the" A.L.J., and that her complaints were not fully credible.  (R. at 79-80.)  Accordingly, the

Appeals Council remanded for further proceedings including the opportunity for a hearing,

updated medical information from treating and examining physicians, a consultative mental status

examination, and a medical expert to clarify the severity of Plaintiff's impairments, if necessary.

(R. at 79-80.)  Further, the Appeals Council noted that the A.L.J. could choose to consult a

vocational expert ("VE") to identify appropriate jobs and to clarify what Plaintiff's limitations

would have on her occupational base, if necessary; but before relying on the expert, the A.L.J.

---

[1] It is unclear from the report exactly how the A.L.J. ignored a treating source opinion, or what issue it related to that was reserved to the Commissioner.

[2] Counsel for Ms. Gabaldon also made sure the Appeals Council had access to other medical records he had submitted previously.  (R. at 74.)  Plaintiff did not request an appearance before the Appeals Council to present oral argument.  (See R. at 72, 74-76.)

was to "identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles and . . . the Selected Characteristics of Occupations . . . ." (R. at 80-81.)

A.L.J. Larry E. Johnson held a hearing on April 5, 2004; Plaintiff testified, and VE Duane Johnson was present but did not testify. (R. at 509-31.) The A.L.J. issued his decision on June 24, 2004, analyzing Plaintiff's claim in accordance with the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f). (R. at 19-32.) At step one of the sequential evaluation, the A.L.J. found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. (R. at 23.) At steps two and three, the A.L.J. found that Plaintiff's musculoskeletal impairments, fibromyalgia, arthritis, depression, and anxiety were "severe" within the meaning of 20 C.F.R. §§ 404.1421 and 416.921. (R. at 23-27.) The A.L.J. determined, however, that Plaintiff's overall condition had not met or equaled in severity any disorder described in the Listing of Impairments, Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. (R. at 27.) The A.L.J. further concluded that Plaintiff's allegations regarding her limitations were not fully credible because her complaints were inconsistent with the objective medical evidence. (R. at 29.) At step four, the A.L.J. determined that Plaintiff had an RFC for employment essentially within a full range of light work and that Plaintiff would be unable to perform her past relevant work. (R. at 29-30.) At step five, using the Medical-Vocational Guidelines ("the Grids") as a framework, the A.L.J. found that there were jobs existing in significant numbers in the national economy and that a finding of "not disabled" was directed by Medical-Vocational Rule 202.20, 20 C.F.R. Pt. 220, App. 2. (R. at 30.) The A.L.J. concluded that Ms. Gabaldon was not disabled at any time through the date of his decision. (*Id.*)

Plaintiff filed a Request for Review of Hearing Decision by the Appeals Council on July 27, 2004. (R. at 12-18.) The Appeals Council denied this request for review on February 1, 2005, thereby making the decision of the A.L.J. the final decision of the Commissioner for purposes of judicial review. (R. at 7-11.) On March 31, 2005, Plaintiff filed this Complaint seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). (Doc. 1.)

## III.    RELEVANT MEDICAL HISTORY

Ms. Gabaldon's physical problems date back to 1995 when she presented to Dr. John Sloan with chronic pain in her neck and arm due to repetitive original injury. (R. at 398-402.) Dr. Sloan noted that Plaintiff showed no signs of symptom magnification during a J-mar grip test at St. Joseph Hand Clinic, and he diagnosed Plaintiff with chronic upper extremity pain with evidence of a right cubital tunnel syndrome with slight delay in sensory and nerve latency. (R. at 400-01.) He placed restrictions on the amount of weight Plaintiff should lift and the time she should spend engaging in any repetitive motion. (R. at 400.) In November, 1995, Dr. Sloan assessed a seven percent upper extremity impairment due to right cubital tunnel syndrome, and in January, 1996, he assessed an eight percent whole body impairment due to bilateral ulnar neuritis. (R. at 398-99.)

In October of 1999, Ms. Gabaldon saw her primary care physician, Dr. Gloria Ruiz, for neck pain after a fall in Plaintiff's bathroom. (R. at 453.) After another fall in January, 2000, Plaintiff began physical therapy at NovaCare due to muscle spasms in her lumbar area and pain in her knees, hips, and left upper extremity. (R. at 369.) X-rays taken at St. Vincent Hospital on the day of the fall were negative. (R. at 382.) The range of motion in Plaintiff's upper and lower

7

Plaintiff filed a Request for Review of Hearing Decision by the Appeals Council on July 27, 2004. (R. at 12-18.) The Appeals Council denied this request for review on February 1, 2005, thereby making the decision of the A.L.J. the final decision of the Commissioner for purposes of judicial review. (R. at 7-11.) On March 31, 2005, Plaintiff filed this Complaint seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). (Doc. 1.)

## III.    RELEVANT MEDICAL HISTORY

Ms. Gabaldon's physical problems date back to 1995 when she presented to Dr. John Sloan with chronic pain in her neck and arm due to repetitive original injury. (R. at 398-402.) Dr. Sloan noted that Plaintiff showed no signs of symptom magnification during a J-mar grip test at St. Joseph Hand Clinic, and he diagnosed Plaintiff with chronic upper extremity pain with evidence of a right cubital tunnel syndrome with slight delay in sensory and nerve latency. (R. at 400-01.) He placed restrictions on the amount of weight Plaintiff should lift and the time she should spend engaging in any repetitive motion. (R. at 400.) In November, 1995, Dr. Sloan assessed a seven percent upper extremity impairment due to right cubital tunnel syndrome, and in January, 1996, he assessed an eight percent whole body impairment due to bilateral ulnar neuritis. (R. at 398-99.)

In October of 1999, Ms. Gabaldon saw her primary care physician, Dr. Gloria Ruiz, for neck pain after a fall in Plaintiff's bathroom. (R. at 453.) After another fall in January, 2000, Plaintiff began physical therapy at NovaCare due to muscle spasms in her lumbar area and pain in her knees, hips, and left upper extremity. (R. at 369.) X-rays taken at St. Vincent Hospital on the day of the fall were negative. (R. at 382.) The range of motion in Plaintiff's upper and lower

7

extremities, cervical spine, hip, and left arm were within the normal range (R. at 364, 369); her physical therapist noted that the persistent pain was consistent with myofascial[3] dysfunction and SI joint dysfunction with posterior right pelvic rotation; myofascial tightness being the most probable primary cause of pain. (R. at 365.) The therapist also noted, however, that Ms. Gabaldon's complaints of pain were not consistent with her movement patterns and range of motion, and that Plaintiff tended to magnify her symptoms. (R. at 365, 368.) During the months after the fall, Plaintiff also saw Dr. Ruiz, complaining of pain in her left shoulder, at the elbow, neck, lower back, and both legs, in her left hand and arm, in her right hand, and she mentioned that both hands were starting to go numb and that she sometimes buckles at the hip. (R. at 451-52.) Dr. Ruiz noted that most of Plaintiff's pain was myofascial, that she may have some tendonitis at the left shoulder, and that she probably has sacroiliitis.[4] (R. at 452.) Dr. Ruiz recommended cessation of house cleaning work, continued physical therapy, massage therapy, and medication. (*Id.*)

In March, 2000, Dr. Ruiz ordered full shoulder x-rays; they were negative for acute fracture or dislocation, negative for calcific tendinitis or other significant radiographic abnormalities, but did show mild degenerative changes at the AC joint. (R. at 449, 458.) Dr. Louis Seade also examined Plaintiff in March, assessing her with myofascial neck pain syndrome, impingement syndrome with rotator cuff tendonosis, and sacroiliac dyskinesis. (R. at 359-60.) Plaintiff described her pain as slight and refused the subacromial injections Dr. Seade

---

[3] Myofascial means "[o]f or relating to the fascia surrounding and separating muscle tissue." STEDMAN'S MEDICAL DICTIONARY 1168 (Marjory Spraycar ed., Williams & Wilkins 26th ed. 1995).

[4] Sacroiliitis is "[i]nflammation of the sacroiliac joint." *Id.* at 1565.

recommended.  (*Id.*)  Plaintiff began seeing Dr. Carlos Esparza in April, 2000 for pain in her left

hand, arm, and shoulder that she attributed to her January, 2000 fall.  (R. at 159.)  Dr. Esparza

found no gross abnormalities or atrophy in Plaintiff's upper extremities or shoulders and found

full range of motion in the cervical spine, shoulder, elbow, wrists, and digits.  (R. at 160.)  He did

see some restriction in the left shoulder, noticed spasms in the left arm and shoulders, and noted

that Plaintiff did not exhibit exaggerated pain behaviors.  (*Id.*)  Dr. Esparza assessed Plaintiff with

left upper extremity strain/sprain, including the forearm, proximal arm, and shoulder girdle

muscles, along with a mild right shoulder sprain.  (*Id.*)  He recommended exercise, physical

therapy, and medication.  (*Id.*)

Ms. Gabaldon successfully completed her physical therapy at NovaCare in May, 2000,

meeting all goals and making maximum medical improvement.  (R. at 361.)  Her goals included

decreased lower back and shoulder pain, improved posture and body mechanics, and an increased

ability to sit and stand pain free.  (*Id.*)  She received deep therapeutic massage from June, 2000

through February, 2001 at Life Transition Therapy.  (R. at 373-78.)  At the end of her treatment,

the massage therapist noted that the therapy seemed to help Ms. Gabaldon's muscle pain in her

shoulders, arms, and neck, but it had become clear through treatment that Plaintiff also suffered

from undiagnosed nerve pain in her legs and arms which therapy did not relieve.  (R. at 373.)

Plaintiff continued to see Dr. Esparza throughout 2000 and 2001 for a total of six

documented visits.  (R. at 151-61.)  She told him that while the deep tissue massage did make her

feel better (R. at 156-58), she believed such improvement was temporary.  (R. at 155.)  C-spine x-

rays ordered by Dr. Esparza in July, 2000 showed some degenerative changes of the disc space at

C5-6 with some slight spondylolisthesis of C5 on C6.  (R. at 155.)  A follow-up MRI of her

cervical spine showed protrusions at C4-5 and more moderate protrusions at C5-6. (R. at 153.)

Dr. Esparza noted that these protrusions were possibly the cause of Plaintiff's radicular symptoms

and discussed surgery and epidural injections as treatment options. (*Id.*) In August, 2000, he

recommended that she do no overhead reaching and that she limit lifting to fifty pounds

occasionally and twenty-five pounds frequently. (*Id.*) Dr. Ruiz, who also examined Plaintiff in

August, ordered lumbar and cervical MRIs and advised Plaintiff to take four weeks off of her

house cleaning job, which seemed to be exacerbating her condition. (R. at 441-44.) The MRIs

were performed in November, 2000; the lumbar spine MRI was unremarkable, the cervical spine

MRI showed minimal degenerative disc disease with tiny disc protrusions, but was otherwise

unremarkable. (R. at 379-81.) In a follow-up visit in December, 2000, Dr. Ruiz assessed Plaintiff

with myofascial pain resulting from January's fall and recommended further massage and physical

therapy and possibly a chiropractor and injections for her left shoulder. (R. at 437-38.)

     In September, 2002, Plaintiff complained of neck, arm, lower back, and hip pain. (R. at

421-23.) Dr. Ruiz examined Plaintiff and found a range of motion in her neck about eighty

percent of normal laterally, but nothing else remarkable; Dr. Ruiz did not recommend any

medication in addition to the Ibuprofen Plaintiff had already been taking for pain, and noted that

Plaintiff could see Dr. Esparza for some of her symptoms. (R. at 421-23.) Ms. Gabaldon fell in

November, 2002, and presented to Dr. Ruiz with knee, back, arm, and neck pain. (R. at 418-19.)

Dr. Ruiz assessed muscular tenderness in the paracervical and lumbar muscles, full range of

motion of both knees without much pain, soft tissue injury to her knees, and exacerbation of her

back pain; she ordered physical therapy and advised Plaintiff to take Ibuprofen for pain. (R. at

418.) Plaintiff attended therapy at Turquoise Trail Physical Therapy and Rehabilitation from

10

December, 2002 to January, 2003. (R. at 238-46, 370-71.) She presented with myofascial pain syndrome consistent with right anterior ileal rotation and right upslip, and within four weeks reported that the therapy made her feel much better. (R. at 370.)

Dr. Thomas Kravitz performed a consultative examination of Plaintiff in December, 2002 upon request by the New Mexico Disability Determination Services. (R. at 215-29.) Plaintiff presented with multiple complaints regarding chronic pain and psychiatric issues. (R. at 215.) His examination revealed tenderness in Plaintiff's neck over her fourth through seventh cervical vertebrae with some paraspinous spasm; no significant pathological adenopathy; mild tenderness in her lower lumbosacral spine without significant spasm appreciated; a full range of motion, though painful throughout much of her joints; and no active arthritis appreciated. (R. at 216-17.) In the Medical Source Statement of Ability to Do Work-Related Activities, Dr. Kravitz noted that Plaintiff should be limited to lifting ten pounds occasionally and less than ten pounds frequently because of cervical degenerative disc disease; Plaintiff could stand or walk up to two hours in an eight hour day because of chronic low back pain and cervical degenerative disc disease; and she could sit up to six hours in an eight hour day. (R. at 219-20.) He did not note limitations in Plaintiff's ability to reach overhead or handle or manipulate objects. (R. at 220.)

A DDS physician, who never examined Ms. Gabaldon personally, completed a Physical RFC sometime after Dr. Kravitz's exam. (R. at 223-29.) This evaluator concluded that Plaintiff could: occasionally lift and/or carry fifty pounds; frequently lift and/or carry twenty-five pounds; stand and/or walk about six hours in an eight hour workday; sit about six hours in an eight hour workday; and push and/or pull an unlimited amount. (R. at 224.) These conclusions were based on a review of Ms. Gabaldon's history; the evaluator noted that Plaintiff had full range of motion

11

in all joints despite complaints of multiple arthralgias, there were no signs of lumbar radiculopathy

and minimal evidence of musculoskeletal restriction, and that Plaintiff's subjective complaints of

pain were out of proportion to objective findings. (R. at 224-28.)

Ms. Gabaldon was seen in the emergency room in February, 2003 for shoulder pain. (R.

at 247-51.) The next month, Dr. Ruiz referred Plaintiff to Dr. Murray Sokoloff, who primarily

assessed fibromyalgia syndrome, post-traumatic,[5] and prescribed Propoxyphene and Ultracet. (R.

at 257.) Plaintiff saw Dr. Sokoloff through September, 2003. (R. at 384-89.) Dr. Sokoloff

found full range of motion in Plaintiff's wrists, elbows, shoulders, neck, hips, knees, ankles, and

back. (R. at 387.) Over the months he prescribed physical therapy, Darvocet, Doxepin,

Propoxyphene Hydrochloride, and joint injections for possible adhesive capsulitis. (R. at 384-89.)

Plaintiff attended physical therapy at New Mexico Sports Fitness and Physical Therapy from May

to August, 2003. (R. at 334-57.) Plaintiff consistently complained of fatigue and soreness, but

therapists noted she was gradually improving. (*Id.*)

Ms. Gabaldon has also consistently been treated for psychological issues. In fact, Dr. Ruiz

once opined that Plaintiff's greatest problem was her emotional psychiatric issues. (R. at 423.)

Depression, anxiety, stress at home, counseling, and Zoloft are mentioned as early as 1999 in a

progress note from Dr. Ruiz's office. In May and June, 2001, Plaintiff was admitted to St.

Vincent Hospital two times for suicidal thoughts and depression. (R. at 163-67.) At discharge

from her second admission, Dr. Daniel Collins assessed Plaintiff with major depression, alcohol

---

[5] Fibromyalgia syndrome is defined as "a rheumatic disorder characterized by body aches, pain, stiffness,
sleep disturbances and fatigue, as well as tenderness in specific sites on the body, that occurs predominately in
women[.]" John Hopkins Medicine, http://www.hopkinshospital.org/health_info/Arthritis/reading/glossary.html
(last visited Oct. 13, 2005).

12

dependence, and a Global Assessment of Functioning ("GAF") of 60,[6] up from an earlier GAF of

35;[7] he also recommended that she continue on Prozac, enter a Chemical Dependency program,

and attend 12 step meetings. (R. at 164, 166.) Two months later, Plaintiff was admitted to St.

Vincent's Intensive Outpatient Program where she made minimal progress. (R. at 168-69.)

Plaintiff also received counseling as a victim of domestic violence from the Esperanza Shelter for

Battered Families, Inc. from April through November, 2001. (R. at 171.)

　　　Plaintiff's therapy continued at Santa Fe Community Guidance Center where she

participated in individual and group therapy from August, 2001 to May, 2003, primarily with Dr.

Gary Borrell and Mr. Peter Vance, M.S., LPC. (R. at 258-331.) On September 19, 2002, Dr.

Borrell stated that Plaintiff was disabled from performing any occupation, and estimated it would

be over twelve months before Plaintiff could return to work. (R. at 196.) In October, 2003, Mr.

Vance completed a Medical Opinion Re: Ability to Do Work-Related Activities form. (R. at 392-

93.) He concluded that due to recurring PTSD and depression, Plaintiff would be limited but

satisfactory in thirteen of her work-related activities; seriously limited, but not precluded in seven

areas of activities; unable to meet competitive standards in two areas; and unlimited or very good

in four areas. (*Id.*) The most recent review of Plaintiff shows an assessment of major depressive

---

　　　[6] The GAF Scale represents "the clinician's judgment of the individual's overall level of . . .
psychological, social, and occupational functioning." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL
MANUAL OF MENTAL DISORDERS 32 (4th ed. Text Revision 2000) [hereinafter DSM-IV-TR]. A GAF between 51
and 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR
moderate difficulty in social, occupation, or school functioning (e.g., few friends, conflicts with peers or co-
workers)." *Id.* at 34.

　　　[7] A GAF between 31 and 40 represents "[s]ome impairment in reality testing or communication (e.g.,
speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school,
family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to
work . . . .)" *Id.*

disorder and PTSD; Mr. Vance stated that while Plaintiff has improved over time, she is still affected by the symptoms of her diagnoses. (R. at 258, 488.)

Dr. Michael Gzaskow completed a comprehensive psychiatric consultation for DDS in May, 2002. (R. at 173-77.) Dr. Gzaskow noted a depressed mood during discussion of Plaintiff's chronic pain and family, no evidence of any organic or psychotic thought pathology, and average intellectual functioning. (R. at 176.) He assessed her with major depression (chronic/severe), alcohol dependence in full remission, general anxiety disorder with episodic panic attacks, and borderline personality traits (by history). (R. at 176-77.) Dr. Gzaskow concluded that Plaintiff has an ability to relate to others that may be compromised by her depressive isolation and withdrawal, can follow and understand directions, attend to simple tasks, and manage her own funds. (R. at 177.) He noted that Plaintiff stated she could not withstand the stress and pressures associated with daily work activities. (*Id.*)

Dr. J. LeRoy Gabaldon completed a Psychiatric Review Technique and a Mental RFC in June, 2002. (R. at 178-95.) He assessed mild restrictions of activities of daily living and difficulties in maintaining concentration, persistence, and pace, and mild to moderate difficulties in maintaining social functioning. (R. at 192.) He also concluded Plaintiff would be moderately limited in her abilities to accept and carry out detailed instructions, respond appropriately to criticism from supervisors and get along with coworkers or peers, be aware of and respond appropriately to change, and set realistic goals. (R. at 178-79.) Dr. Gabaldon felt that all other abilities would not be significantly limited. (*Id.*) He noted that Plaintiff's assertion of impairment did not appear to be consistent with available clinical evidence. (R. at 180.)

Dr. Jill Blacharsh completed a second Psychiatric Review Technique and Mental RFC in

14

November, 2002. (R. at 197-214.) While she did find more limitations than Dr. Gabaldon had

months earlier, Dr. Blacharsh concluded that Plaintiff could perform simple, repetitive, one to two

step tasks with adequate pace and persistence. (R. at 197-99.) She also noted that Plaintiff was

partially credible and consistent with the medical evidence of record. (R. at 199.)

## IV.    DISCUSSION

In her Memorandum in Support of Plaintiff's Motion to Reverse or Remand, Plaintiff

raises a number of issues in arguing that the A.L.J.'s decision was erroneous. (Doc. 12.) Plaintiff

contends that: 1) the A.L.J. erroneously failed to consider evidence after Plaintiff's date last

insured ("DLI"); 2) the Mental RFC Finding was unsupported by substantial evidence; 3) the

finding that Ms. Gabaldon could perform light work was unsupported by substantial evidence; 4)

the A.L.J. erroneously applied the Grids at step five; and 5) the credibility determination was

unsupported by substantial evidence. (Doc. 10 at 16-26.)

### A.    The A.L.J. Erroneously Failed to Consider Evidence Post-Dating Plaintiff's DLI.

I agree that the A.L.J. erred by failing to properly consider evidence post-dating Plaintiff's

DLI of December 31, 2002. (R. at 23, 25-28.) While a Title II claimant seeking disability

insurance benefits must prove disability prior to her DLI, there is no such requirement for Title

XVI claimants seeking SSI.[8] *See* Soc. Sec. Ruling 83-20, 1983 WL 31249, at *1. SSR 83-20

explains that SSI payments may only be awarded beginning with the first month the claimant is

found disabled *after* her application is filed. *Id.* Normally, if a person is disabled at the time she

---

[8] Title II benefits require the claimant to have a work history; if there are enough quarters of credited work, the claimant is "insured" for purposes of Title II and can receive disability insurance benefits. Barbara Samuels, *Basic Social Security Retirement and Basic SSI Eligibility Requirements (Excluding Disability)*, 143 PLI/NY 41, 43 (2004). SSI eligibility is not based on work history, but on financial need. *Id.*

15

filed under Title XVI, it is unnecessary to determine the onset date of her disability because she cannot receive SSI benefits pre-dating her application. *Id.* If, however, she filed an application under Title XVI *before* she is found to be disabled under the Social Security Regulations, it is necessary to determine her onset date in order to calculate when she was eligible for SSI payments. *Id.* This is exactly Ms. Gabaldon's predicament.

The Commissioner argues that although the A.L.J. misstated the time period under consideration, he ultimately adjudicated the correct period – from the alleged disability date through the date of his decision. (*See* Doc. 11 at 3; R. at 23, 26, 31.) Defendant argues that this "arguable deficiency in opinion writing technique does not require the court to set aside a finding that is supported by substantial evidence." (Doc. 11 at 3.) The Commissioner fails to discuss, however, the portion of the A.L.J.'s decision that is most troubling to the Court: in noting Dr. Sokoloff's April 7, 2003 diagnosis of Plaintiff with fibromyalgia, the A.L.J. writes: "It is not clear from a review of the record that the claimant developed fibromyalgia before her date last insured, December, 2002. Nonetheless, Dr. Sokoloff's diagnosis and treatment fell after the claimant's date last insured." (R. at 26.) It seems clear to me that the A.L.J. did not differentiate between Title II and Title XVI in the above conclusion. Even though the A.L.J. later determined that Ms. Gabaldon was not disabled through the date of the decision, such a conclusion appears to be unsupported by substantial evidence because of the cursory analysis of any medical evidence post-dating Plaintiff's DLI. (*See* R. at 25-31.) Because the decision does not consider the implications a later disability onset date would have on possible SSI payments, further findings should be made on whether Ms. Gabaldon was disabled after her DLI.

**B.      The A.L.J. Conclusions Are Not Supported by Substantial Evidence.**

The A.L.J.'s conclusions that Ms. Gabaldon's depression and anxiety were not severe and that her myofascial pain was not established by objective medical evidence are not supported by substantial evidence in the record. (R. at 28-29.) I note initially that Plaintiff asserts the A.L.J. erred in not following the directives contained in the Appeals Council's June 26, 2003 remand order. (Doc. 10 at 19; R. at 80.) Specifically, the A.L.J. did not comply with the Appeals Council's directive to obtain a second mental health consultative examination. (R. at 80.) Although Plaintiff appears to be correct in asserting that the A.L.J. did not follow this directive, this Court's jurisdiction extends only to the final decision of the Commissioner, "which in this case is the ALJ's second decision." *Gallegos v. Apfel*, 1998 WL 166064, at *1 (D.N.M. Apr. 10, 1998) (citing 42 U.S.C. § 405(g); *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). As such, I do not have jurisdiction to consider Plaintiff's contentions regarding the A.L.J.'s adherence to the Appeals Council's remand order.[9] *Id.*

In assessing Plaintiff's mental impairments, the A.L.J. stated that Plaintiff's complaints of depression were inconsistent and not credible because they were not supported by objective medical evidence (R. at 29), largely situational and exacerbated by alcohol abuse and inconsistent compliance with medication (R. at 24, 26-27), and not severe enough, according to examiners, to cause marked limitations in work settings. (R. at 25-26.) The A.L.J. discounts or ignores, without adequate explanation, many portions of medical opinions which might support Ms.

---

[9] There is disagreement on the issue of whether a district court has jurisdiction to remand because the A.L.J. did not comply with the Appeals Council's directives. For example, the court in *Lok v. Barnhart* recently granted a claimant's motion to remand because the A.L.J.'s decision was not consistent with an earlier remand order of the Appeals Council. 2005 WL 2323229, at *6 (E.D. Penn. Sept. 19, 2005). Like *Gallegos*, however, I find that "the ALJ's adherence to the Appeals Council's remand order is not cognizable by this court." 1998 WL 166064, at *1.

Gabaldon's claims.  According to 20 C.F.R. § 404.1527, the A.L.J. is to consider several factors in deciding how much weight to give every medical opinion: whether the source examined the claimant; whether the source has a treating relationship with the claimant; the evidence supporting the opinion; how consistent the opinion is with the record; whether the source is a specialist; and any other relevant factors.  20 C.F.R. § 404.1527(a)(2)(d).

A.L.J. Johnson fails to articulate what weight, if any, he assigned to the various source opinions, or why he chose not to mention other source opinions, in whole or in part.  For example, the A.L.J. cites an opinion submitted by Plaintiff's therapist, Mr. Vance, on Plaintiff's ability to do work-related activities.  (R. at 26-27.)  Mr. Vance's opinion is noted for the areas he believed Plaintiff would have "limited but satisfactory" functioning in, but there is no mention of the seven areas Plaintiff would have "serious limitations" in or the two areas in which she would be "unable to meet competitive standards."  (R. at 26-27, 392-93.)  And while the A.L.J. remarks that Mr. Vance submitted this opinion after Plaintiff's DLI, there is no explanation of why the decision does not cite to a single medical record from Mr. Vance or Gary Borrell, M.D., both of whom treated Plaintiff for Major Depressive Disorder (recurrent) and PTSD at the Santa Fe Community Guidance Center from August, 2001 through May, 2003.  (R. at 258-331.)  *See Hutson v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988) ("An ALJ may not ignore the evidence and make no findings.") (quoted in *Victory v. Barnhart*, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005) (citations omitted) (holding that it was clear legal error for the A.L.J. to make absolutely no mention of a treating physician's opinion)).

This history of psychiatric care, coupled with at least nine visits to Plaintiff's primary care

18

physician for emotional issues from August, 2000 through September, 2003, cause me to question the A.L.J's reasoning behind calling Plaintiff's complaints of depression inconsistent or not supported by objective medical evidence. (R. at 420-42.) Although I agree that there may be a problem concerning Ms. Gabaldon's irregular compliance with her medication, I question the A.L.J.'s reliance on Plaintiff's alleged alcohol abuse in deciding that her depression and anxiety failed to reach the severity considered by the Listings; according to at least two physicians, her alcohol abuse was in full remission and immaterial before her DLI. (R. at 27, 176, 199.) On remand, I echo the directive of the Appeal's Council to seek another mental health consultative examination as well as further findings based on the record to determine if Plaintiff's mental impairments are severe enough to be considered nonexertional impairments under the Grids.

Similarly, I find the A.L.J. erred in concluding that Plaintiff's myofascial pain was not established by objective medical evidence. (R. at 29.) He found that "[i]t is not clear from a review of the record that the claimant developed fibromyalgia before her date last insured, December 2002." (R. at 26.) "An ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) (citing 20 C.F.R. § 404.944; *Baker v. Bowen*, 886 F.2d 289, 291-92 (10th Cir.1989)). Dr. Murray Sokoloff's records should have been more thoroughly examined; the fact that the medical records concerning Dr. Sokoloff's diagnosis post-dated Plaintiff's DLI does not bar them from consideration. *See Hardman v. Barnhart*, 362 F.3d 676, 677-81 (10th Cir. 2004) (remanding in part because an MRI, taken more than a year after the claimant's DLI, was not considered but was "crucial to an evaluation of whether objective

19

medical evidence supports claimant's allegations of pain and limitation"). Fibromyalgia, the
disease Dr. Sokoloff diagnosed Plaintiff with, is a rheumatic disorder. *See supra* n.7.
Unfortunately, A.L.J. Johnson misunderstood Dr. Sokoloff to be a dermatologist, when he is in
fact a rheumatologist. (*See* R. at 26-27 ("the claimant was not diagnosed with fibromyalgia by a
specialist in that area, but by a dermatologist"); Doc. 10 at 21 n.8.) This fundamental error
appeared to influence the A.L.J. in giving Dr. Sokoloff's opinion less credibility than it may
otherwise deserve. 20 C.F.R. § 404.1527(d)(5) states, "[w]e generally give more weight to the
opinion of a specialist about medical issues related to his or her area of specialty than to the
opinion of a source who is not a specialist."

   Further, I disagree that Plaintiff's complaints of pain were inconsistent. The medical
record shows a long history of pain complaints and physical therapy (R. at 151-61, 238-47, 256-
57, 332-57, 361-71, 373-78, 384-89, 400-01, 403-06, 412-18, 425, 437-53), as well as
medications for pain such as Skelaxin, Propoxyphene, Ultracet, Depo-Medrol injections, Lortab,
Ibuprofen, and Darvocet. (R. at 156, 257, 386, 412, 418, 440.) The main mention of any of
these medications was in reference to Plaintiff's "noncompliance" with her OxyContin
prescription; however, the A.L.J. failed to appreciate that Dr. Sokoloff's prescription for
OxyContin said "p.r.n." – a phrase which means "use when or as needed." *See* Medical
Abbreviations, http://pharmsci.buffalo.edu/courses/phc311/latin.html (last visited Oct. 21, 2005);
R. at 28, 384.

   The foregoing mistakes and omissions establish that the A.L.J.'s conclusions are not
supported by substantial evidence in the record. (R. at 28-29.) On remand, the A.L.J. should

make further findings regarding whether Plaintiff's fibromyalgia and mental impairments are severe within the meaning of the Listings and whether these nonexertional impairments significantly reduce the underlying job base, precluding conclusive application of the Grids. *See Allen v. Barnhart*, 357 F.3d 1140, 1143 (10th Cir. 2004). I recommend obtaining additional medical testimony as to both Plaintiff's mental and physical impairments and VE testimony on the types of jobs Plaintiff can perform, if any. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992).

## V.    CONCLUSION

In accordance with the standard of limited review, this Court has determined that this case must be remanded to the Commissioner for further proceedings, in accordance with this Memorandum Opinion and Order.

WHEREFORE, IT IS HEREBY ORDERED that Plaintiff's Motion to Reverse and Remand Administrative Agency Decision (Doc. 9) is **GRANTED** and this case is REMANDED to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order. A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

LESLIE C. SMITH
**UNITED STATES MAGISTRATE JUDGE**

21

| | |
|---|---|
| Database: | CTA |
| Citation Text: | 141 F.3d 1184 (Table) |
| Lines: | 128 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

Westlaw

141 F.3d 1184 (Table)
141 F.3d 1184 (Table), 1998 WL 166064 (10th Cir.(N.M.))
**Unpublished Disposition**
**(Cite as: 141 F.3d 1184, 1998 WL 166064 (10th Cir.(N.M.)))**

Briefs and Other Related Documents

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.
Rudy GALLEGOS, Plaintiff-Appellant,
v.
Kenneth S. APFEL, Commissioner, Social Security Administration, [FN*]
Defendant-Appellee.
FN* Pursuant to Fed. R.App. P. 43(c), Kenneth S. Apfel is substituted for John J. Callahan, former Acting Commissioner of Social Security, as the defendant in this action.

No. 97-2267.

April 10, 1998.

Before BALDOCK, EBEL, and MURPHY, Circuit Judges.

ORDER AND JUDGMENT [FN**]
FN** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**1 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f), 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff Rudy Gallegos appeals from an order of the district court that affirmed the Commissioner's denial of his

claim for social security disability and supplemental security income benefits. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and affirm.

Plaintiff alleged a disability beginning on April 16, 1986, due to head, neck, and back injuries and a hearing loss suffered in a fall from scaffolding at work. Although he has a high school education, plaintiff is of borderline intelligence with a full-scale IQ of seventy-eight since his accident. His past work was heavy, unskilled work as a construction laborer and janitor. He was thirty-five years old at the time the administrative law judge (ALJ) issued her final decision on June 26, 1995.

Plaintiff's claim for benefits was denied initially and upon reconsideration. He requested a hearing before an ALJ, who also denied his claim. Upon review, the Appeals Council remanded the case for further development of the record. The ALJ conducted another hearing and again denied benefits. The Appeals Council denied review of the ALJ's second decision, making it the final decision of the Commissioner.

Plaintiff asserts on appeal that the ALJ erred: (1) by failing to obtain additional consultative examinations, as directed by the Appeals Council in its initial remand order; (2) in finding that plaintiff did not meet the listing for organic mental disorders, 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.02; (3) in relying on a hypothetical question to the vocational expert (VE) that did not include all of plaintiff's limitations; (4) in discrediting plaintiff's testimony as to the frequency and severity of his symptoms; and (5) in determining that plaintiff retained the residual functional capacity (RFC) for work. We review the Commissioner's decision on the whole record to determine only whether the factual findings are supported by substantial evidence and the correct legal standards were applied. See *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 289 (10th Cir.1995).

Plaintiff's challenge to the ALJ's adherence to the Appeals Council's remand order is not cognizable by this court. By statute, our jurisdiction extends only to the Commissioner's final decision, which in this case is the ALJ's second decision. See 42 U.S.C. § 405(g); see also *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir.1992). Plaintiff does not argue that the ALJ failed to adhere to a legal requirement to obtain additional medical evidence in reaching her second, final decision, but only that the ALJ did not follow the Appeals Council's direction. Therefore, plaintiff's first issue is not within our jurisdiction.

**\*\*2** Plaintiff has not shown that the ALJ erred in deciding that he did not meet the listing for organic mental disorders, 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.02. The ALJ found that plaintiff met the "A" criteria of the listing, but not the "B" criteria. See II Appellant's App. at 32-34. Substantial evidence supports the ALJ's conclusion that plaintiff does not meet the "B" criteria of the listing because he suffers only "slight" restrictions of activities of daily living and "slight" difficulties in maintaining social functioning, he "seldom" suffers deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner, and he "never" suffers episodes of deterioration or decompensation in work or work-like settings. *Id.* at 33-34. We therefore find no error in the ALJ's conclusion that plaintiff does not meet the listing.

Plaintiff next argues that the ALJ erred in relying on the VE's response to a hypothetical question that did not include all of his alleged mental impairments. A hypothetical question need only include those impairments the ALJ accepts as true. See *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir.1990). The ALJ followed the correct procedure in rejecting plaintiff's claims of mental impairments other than dizziness with bending and stooping, occasional headaches, and susceptibility to stress. See *Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir.1995). Therefore, the ALJ did not err in relying on the VE's testimony that plaintiff can work in spite of these impairments.

Plaintiff also contends that the ALJ erred in discrediting his testimony as to the frequency and severity of his symptoms. "Credibility determinations are peculiarly the province of the [ALJ], and we will not upset such determinations when they are supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir.1990). The ALJ thoroughly discussed her reasons for discounting plaintiff's complaints in light of the medical evidence, see II Appellant's App. at 24-28, and we therefore will not disturb her conclusions. *Cf. Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (remanding where ALJ did not give reasons for his decision).

Finally, plaintiff contends that the ALJ erred in determining that he retained the RFC for work. He argues, again,

that the ALJ did not obtain additional medical evidence required by the Appeals Council in its remand order, and also that the ALJ improperly discounted evidence from Goodwill Industries, where plaintiff worked briefly, that his capabilities were significantly limited. We disagree. We have already pointed out that plaintiff has not argued that the ALJ was legally obligated to obtain additional medical evidence on remand. In addition, it is apparent that the ALJ interpreted the report from Goodwill Industries differently than plaintiff. We have reviewed it and find no error in the ALJ's conclusion that Goodwill Industries found plaintiff unmotivated to work, not incapable of work

**\*\*3** The judgment of the United States District Court for the District of New Mexico is AFFIRMED.

141 F.3d 1184 (Table), 1998 WL 166064 (10th Cir.(N.M.)) Unpublished Disposition

### Briefs and Other Related Documents (Back to top)

? 97-2267 (Docket) (Aug. 14, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

| | |
|---|---|
| Database: | DCT |
| Citation Text: | Slip Copy |
| Lines: | 390 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

Westlaw

Slip Copy
Slip Copy, 2005 WL 2323229 (E.D.Pa.), 106 Soc.Sec.Rep.Serv. 393
(Cite as: 2005 WL 2323229 (E.D.Pa.))

Motions, Pleadings and Filings

United States District Court,
E.D. Pennsylvania.
Samon LOK, Plaintiff.
v.
Jo Anne BARNHART, Commissioner, Social Security Administration
No. Civ.A. 04-3528.

Sept. 19, 2005.

Richard P. Weishaupt, Community Legal Services, Inc., Philadelphia, PA, for Plaintiff.

Teri C. Smith, Office General Counsel, Philadelphia, PA, for Defendant.

*MEMORANDUM*

BAYLSON, J.

*1 Plaintiff, Samon Lok, seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability benefits under Title VII of the Social Security Act, 42 U.S.C. §§ 401-433. Presently before this Court are the parties' cross-motions for summary judgment. Plaintiff filed a reply brief; Defendant did not.

I. *Background and Procedural History*

A. *History of Plaintiff's Treatment for Physical Impairments*

Plaintiff was born on July 1, 1950 (R. at 85). She has previous employment experience as a dishwasher (R. at 98). Plaintiff has not worked since February, 1988 (R. at 98) and she is unable to speak English (R. at 116). In June 2000, Plaintiff was diagnosed with intervertebral disc space narrowing and hypertrophic spur formations (R. at 170). From November 2000 through July 2002, Plaintiff sought treatment of chronic back pain with several different physicians (see R. At 144-146).

From September through December 2002, Plaintiff was treated for back and leg pain by Dr. Glenn Miller (R. at 210). In June of 2002, an orthopedic surgeon, Dr. Andrew Collier, examined Plaintiff and concluded that Plaintiff was suffering from sciatica on the left hand side (R. at 234). During this period in 2002, Plaintiff also saw an SSA consultative examiner, Dr. Raul Yankelevich. Dr. Yankelevich noted Plaintiff's chief complaints of back pain, migraines and chest pain (R. at 182). Dr. Yankelevich reported that the physical examination of Plaintiff was normal (R. at 182-84). Plaintiff also visited a cardiologist, Dr. Brody, in July 2002. Dr. Brody's examination revealed that Plaintiff was "well-appearing" physically and had "no particular chief complaints" (R. at 202). Dr. Brody noted mild symptoms of GERD and that an x-ray revealed "poor inspiration" (R. at 203).

In September 2002, Plaintiff was referred by Dr. Collier to Dr. Miller for a lumbar epidural injection (*see* R. at 207-22). Dr. Miller, who diagnosed Plaintiff with lumbar radiculpathy, performed a total of three injections from September through November 2002. During a January 2003 visit to Plaintiff's primary treating physician, Dr. Thongchai Vorasingha, Plaintiff complained of neck pain, headaches and blurred vision. (R. at 196). Dr. Vorasingha treated Plaintiff's neck pain with a muscle relaxant.

In June 2003, Plaintiff sought treatment from Dr. Eileen Carpenter (R. at 337- 41). At this time Plaintiff complained of leg pain, neck pain, loss of sensation on the left side and chest pain. Plaintiff saw Dr. Carpenter on five more occasions between June 2003 and February 2004. Throughout these visits, Plaintiff continued to complain of back, leg and neck pain. On July 7, 2003, Dr. John Fornace conducted a stress test (R. at 342). This test, which was terminated due to Plaintiff's fatigue, was negative for ischemia, but detected mild abnormalities in the left ventricle and left atria. On July 31, 2003, Dr. Carpenter prescribed chest pain medication because Plaintiff continued to complain of chest pain and an echo cardiogram revealed some "diastolic dysfunction" (R. at 339).

B. *History of Plaintiff's Treatment for Mental Illness*

*2 Plaintiff began treatment at the JFK Community Mental Health Center in December 2002. At this time, Plaintiff complained of depression, crying spells and suicidal thoughts (R. at 248); Plaintiff was subsequently diagnosed by her treating psychiatrist, Dr. Joaquin Canalson, with depressive type psychosis and dependent personality disorder. (R. at 254).

In May 2003, Plaintiff received psychiatric treatment at the Wedge Medical Center (see R. at 314-29). Plaintiff's treating psychiatrist there was Dr. Minda Magundayao. Plaintiff complained of hearing voices, depression, sleeplessness, crying spells, and anxiety (R. at 314). Plaintiff's primary diagnosis was major depression, recurrent with psychosis (R. at 319).

C. *Procedural History*

Plaintiff applied for Supplemental Security Income ("SSI") on April 19, 2002, claiming disability as of April 12, 2002. [FN1] Following initial denial of Plaintiff's application, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before an ALJ on April 1, 2003 (R. at 263-85), and on April 7, 2003 the ALJ issued a decision denying Plaintiff's application (R. at 58-68). On July 18, 2003, the Appeals Council remanded the case to the ALJ to "complete the administrative record" (R. at 73).

> FN1. Plaintiff initially claimed the onset of disability as of August 1, 1995 (R. at 85), but later amended the onset date to reflect the date of April 12, 2002 (R. at 267).

On February 18, 2004, the same ALJ conducted a second hearing (R. at 286-308), and on February 24, 2004 the ALJ issued a second decision denying Plaintiff's application for SSI benefits (R. at 10-27). On May 27, 2004, the Appeals Council denied Plaintiff's request for review (without opinion), making the Commissioner's decision to deny benefits final (R. at 5). Plaintiff subsequently sought judicial review of the Commissioner's decision in this Court, and filed a motion for summary judgment on January 25, 2005 (Doc. No. 12). Defendant filed a cross-motion for summary judgment on February 24, 2005 (Doc. No. 13).

II. *Contentions of the Parties*

A. *Did the ALJ Fail to Follow the Directives of the Appeals Council and Established SSA Policies?*

In her Motion for Summary Judgment, Plaintiff contends that, following remand by the Appeals Council, the ALJ failed to give adequate consideration to the order of the Appeals Council. Specifically, Plaintiff contends that the ALJ erred when he failed to conduct mental and orthopedic consultative examinations, as suggested in the report by the Appeals Council. (Pl's Br. at 9.) Plaintiff asserts that in the second ALJ report, the ALJ did not even address the issue of why these consultative examinations were not done. (Pl's Br. at 10).

Plaintiff also claims that the ALJ erred by failing to give appropriate consideration to the SSA rulings explicitly referenced and commended by the Appeals Council. The two rulings at issue are Ruling 85-16 and Ruling 96-8p. Both of these rulings pertain to the proper analysis of residual functional capacity for mental impairments. Plaintiff asserts that the ALJ, contrary to the specific direction of the Appeals Council, failed to follow the approach set out in these two rulings. (Pl's Br. at 10).

\*3 Defendant asserts that the ALJ's decision was supported by substantial evidence and that the ALJ complied with the remand order of the Appeals Council. Specifically, Defendant contends that the ALJ sought clarification from Dr. Vorasingha and that although Dr. Vorasingha would not clarify his opinion, the record was nevertheless fully developed based on new records provided by Plaintiff at the second ALJ hearing. (Def's Br. at 16). Defendant further contends that the ALJ was not required to order additional consultative examinations because at the second hearing Plaintiff's newly provided medical records were sufficient for the ALJ to make a disability determination.

B. *Did the ALJ Misrepresent Facts in the Record and Fail to Accord Appropriate Weight to Plaintiff's Treating Physicians?*

Plaintiff's other primary contention is that the ALJ erroneously substituted his own medical judgment for that of Plaintiff's treating physicians and psychiatrists. (R. at 16). Specifically, with regard to Plaintiff's herniated discs, Plaintiff asserts that the ALJ entirely ignored the disability opinions authored by Plaintiff's treating physician. Additionally, Plaintiff asserts that the ALJ improperly dismissed or ignored the diagnostic test results and specific courses of treatment adopted by Plaintiff's treating physicians (Pl's Br. 17-19).

Defendant asserts that the ALJ properly assessed Plaintiff's mental and physical limitations. With respect to Plaintiff's mental limitations, Defendant asserts that the ALJ properly gave no weight to the opinion of the second of the two treating psychiatrists. Dr. Magundayao. Defendant claims that the opinion of Dr. Magundayao was inconsistent with Plaintiff's symptoms as well as Plaintiff's testimony (Def's Br. at 20-21). With respect to Plaintiff's physical limitations, Defendant asserts that the ALJ discounted the opinion of Plaintiff's treating physician, Dr. Voradingha, because it was inconsistent with his own treatment notes and other evidence in the record (Def's Br. at 24-25).

III. *Legal Standard*

A. *Disability Determinations*

The Social Security Administration applies a five step sequential evaluation to determine if an applicant qualifies for SSI. *See, e.g., Burns v. Barnhart,* 312 F.3d 113 (3d Cir.2002); *Plummer v. Apfel,* 186 F.3d 422, 428 (3d Cir.1999); Williams v. Sullivan, 970 F.2d 1178, 1180-81 (3d Cir.1992); see also 20 C.F.R. § 404.1520. In *Plummer,*, the Third Circuit explained the five-step sequential evaluation process promulgated by the Social Security Administration to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The Court explained:

In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § [404.] 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520?)). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.

10/24/2005 10:21 AM

*4 In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work.

If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing insignificant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of per forming work and is not disabled. *See* 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step.

*Plummer,* 186 F.3d at 428.

Congress has authorized the Commissioner "to make findings of fact, and decisions as to the rights" of any individual applying for disability benefits. 42 U.S.C. § 405(b)(1). The Commissioner is also required to resolve any discrepancies between the medical evidence and a claimant's subjective complaints. 42 U.S.C. § 416.929.

B. *Judicial Review of Disability Determinations*

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). The district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* However the Commissioner's findings "as to any fact, if supported by *substantial evidence,* shall be conclusive." *Id* (emphasis added). The ALJ's findings of law, however, are subject to plenary review. See *Wright v. Sullivan,* 900 F.2d 675, 678 (3d Cir.1990); *Podedworny v. Harris,* 745 F.2d 210, 221 n. 8 (3d Cir.1984). Accordingly, this Court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." *Schwartz v. Halter,* 134 F.Supp.2d 640, 647 (E.D.Pa.2001).

Substantial evidence has been defined as "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The substantial evidence standard "is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." *Schaudeck v. Commissioner of S.S.A.,* 181 F.3d 429, 431 (3d Cir.1999).

IV. *Discussion*

A. *The Remand Order of the Appeals Council*

*5 After the ALJ denied Plaintiff's application for benefits on April 7, 2003 (see R. at 55), the Appeals Council vacated the decision and remanded the case to the ALJ for further proceedings and gathering of evidence (see Order of Appeals Council, R. at 72). The order of the Appeals Council identified the following issue for the ALJ to address:

The hearing decision finding that the claimant has not severe impairment is not supported by substantial evidnece. An MRI on June 21, 2002 showed small central herniations at L4-5 and L5-S1. The claimant is diagnosed with depressive type psychosis with suicidal thoughts and is treated with antidepressant and antipsychotic medications. The Administrative Law Judge noted that Dr. Thongchai Vorasingha, treating physician, "repeatedly has offered his opinion since February 2000, that the claimant will be temporarily incapacitated for approximately six months." The Administrative Law Judge found that Dr. Vorasingha's opinion was unconvincing and that "he never offered any statement of reasons in support of his opinions other than to check boxes on a form and note diagnoses." However, there is no indication in the record that Dr. Vorasingha was recontacted for additional evidence or clarification of his opinions pursuant to 20 C.F.R. 416.912 and Social Security Ruling 96-5p. Therefore, further consideration of claimant's mental and orthopedic impairments is warranted.

(R. at 72) (internal citations omitted). On remand, the Appeals Council directed the ALJ to take the following steps:

■ "Obtain additional, updated evidence concerning Plaintiff's mental and herniated lumbar disc impairments in order to complete the administrative record in accordance with regulatory standards concerning consultative examinations and existing medical evidence (20 CFR 416.912-913)." The order noted that additional evidence "may include, if warranted and available, a mental status consultative examination and medical source statements about what claimant can still do despite the impairments."

■ "Recontact Dr. Vorasingha for additional evidence or clarification of his recent opinion pursuant to 20 CFR 416.912 and Social Security Ruling 95-5p."

■ "Give further consideration to the claimant's maximum residual functional capacity ("RFC") and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 416.945 and Social Security Rulings 85-16 and 96-8p)." (R. at 73).

B. *The Second Decision of the ALJ*

On February 24, 2004, following another hearing on February 18, 2004, the ALJ issued a second order denying Plaintiff's application for benefits (R. at 13). In reviewing the evidence, the ALJ made the following finds in concluding that the Plaintiff was not disabled (R. at 26):
   1. Plaintiff has not engaged in substantial gainful employment since 1987;
   2. Plaintiff has major depression, a personality disorder and degenerative disease of the lumbar spine but does not have an impairment or combination of impairments listed in or medically equal to one listed in Appx. 1, Subp. P, Reg. No. 4, Sections 1.04, 12.04 and 12.08;
   *6 3. Plaintiff's statements concerning her alleged impairments and their effect on her ability to work are only partially credible;
   4. Plaintiff retains the RFC for medium work requiring only simple, routine tasks;
   5. Plaintiff has no prior relevant work;
   6. Plaintiff was 48 years old at the alleged onset date, which is defined as a younger person, and is now 50 years old, which is defined as a person closely approaching advanced age;
   7. Plaintiff has a 10th grade education obtained in Cambodia, does not read or write English and lacks transferable skills;
   8. Given the RFC set forth above, the Plaintiff's age, educational background and work experience, the vocational testimony establishes that Plaintiff is able to make an adjustment to occupations that exist with significant numbers of jobs in the regional and national economies;
   9. Plaintiff has not been under a "disability," as defined in the Social Security Act, since the alleged onset date.

In reviewing the ALJ's decision, the Court finds that the ALJ's procedures were not consistent with the remand order of the Appeals Council. Although the Commissioner does not dispute this, it argues the ALJ's findings are themselves based on substantial evidence. The Court disagrees. Plaintiff's motion for summary judgment will be granted and Defendant's motion for summary judgment will be denied, and the matter will be remanded.

C. *Upon Remand, the ALJ Failed to Follow the Order of the Appeals Council*

The regulations provide that "the administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 416.1477(b). The Appeals Council directed the ALJ to obtain additional evidence concerning Plaintiff's mental impairment and Plaintiff's herniated disc impairments. Specifically, the Appeals Council mandated the ALJ to recontact Dr. Vorasingha for additional evidence or clarification of his opinion. The Appeals Council further instructed the ALJ that the requisite additional evidence "may include" an orthopedic consultative examination and/or a mental status consultative examination.

It is undisputed that Dr. Vorasingha was uncooperative in responding to requests for clarification. Plaintiff, however, asserts that the unavailability of Dr. Vorasingha, coupled with the fact that the ALJ rejected all of the newly gathered evidence obtained for the purpose of the second hearing (R. at 309- 344), required the ALJ to conduct consultative

examinations in order to complete the administrative record.

The additional evidence provided by Plaintiff prior to the second hearing included an RFC and clinical notes prepared by Plaintiff's treating psychiatrist, Dr. Magundayao. The RFC prepared by Dr. Magundayao consisted almost entirely of "poor" ratings. (R. at 310-13). The RFC, which was prepared on January 24, 2004, concluded that Plaintiff could not "manage benefits in ... her own best interest." (R. at 313). The additional records also included clinical notes from the Wedge Medical Center. These notes reflect that in May 2003, Plaintiff complained of depression, sleeplessness, crying spells, hearing voices and anxiety (R. at 314). These notes also reflect that under the care of Dr. Magundayao, Plaintiff continued to take antipsychotic and antidepressive medications (e.g., R. at 319). The additional records also included the clinical notes of Dr. Eileen Carpenter, which reflected Plaintiff's complaints of leg, chest and neck pain (R. at 337).

*7 The ALJ rejected Dr. Magundayao's opinion because it was contrary to the medical record and Plaintiff's own daily activities. (R. at 23-24). The Court interprets the Appeals Council's remand Order to have required a consultative exam under the circumstances presented, including the unavailability of the original treating physician for a clarifying opinion.

The Order of the Appeals Council explicitly noted that the ALJ's original finding that Plaintiff was not disabled was not supported by substantial evidence (R. at 72). The Appeals Council required that the ALJ recontact the treating physician for clarification and suggested that the ALJ utilize consultative examiners to further clarify the record. Because the treating physician was unwilling to provide further clarification, it was incumbent upon the ALJ to obtain clarification from other sources, namely consultative examiners. Not only was such a course implied in the remand order of the Appeals Council, but it is also written into the regulations, under the heading "Need for consultative examination," as follows: "If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense." 20 CFR 416.912(f). It is clear that due to the lack of cooperation on the part of Dr. Vorasingha, the information required by the Appeals Counsel and sought by the ALJ was not available. Both the regulations and the remand Order, therefore, required the ALJ to seek the necessary information from alternative sources, and the circumstances required use of one or more consultative examiners.

Although Defendant insists that the additional records provided by the Plaintiff sufficiently augmented the record to provide substantial evidence which supports the ALJ's findings, the Court agrees with Plaintiff that such an argument is specious where the ALJ did not credit any of the new evidence as credible. Under the ruling of the Appeals Counsel that substantive evidence was lacking to support the first decision by the ALJ, the mere addition of a medical report which the ALJ found not credible did not satisfy the Appeals Council's remand Order. The ALJ's task was to secure new believable evidence. Absent any creditable new evidence, the ALJ remains in the same position as he was at the conclusion of the first hearing—that is, lacking substantial evidence on which to base a finding.

V. Conclusion

For the foregoing reasons, this Court concludes that the ALJ failed to complete the administrative record as required by the Appeals Council and thus the ALJ's finding that Plaintiff is not disabled was not based on substantial evidence. However, because the Court finds that the record does not necessarily show Plaintiff is disabled, and reversal of the ALJ's decision is not warranted, the case will be remanded to the Commissioner to address this issue.

*8 An appropriate Order follows.

ORDER

AND NOW, this 19th day of September, 2005, after careful and independent consideration of the parties' cross-motions for summary judgment, and review of the record, it is hereby ORDERED that:

   1. The Commissioner's Motion for Summary Judgment (Doc. No. 13) is DENIED;

   2. The Plaintiff's Motion for Summary Judgment (Doc. No. 12) and to Remand is GRANTED;

   3. The case is remanded to the Commissioner of Social Security pursuant to Sentence 4 of § 205(g) of the Social Security Act for further proceedings consistent with this opinion; and

4. The Clerk shall close this case.

## Motions, Pleadings and Filings (Back to top)

? 2:04cv03528 (Docket) (Aug. 02, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

121 Fed.Appx. 819
121 Fed.Appx. 819, 102 Soc.Sec.Rep.Serv. 565
(Cite as: 121 Fed.Appx. 819)

Briefs and Other Related Documents

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,
Tenth Circuit.
Joy VICTORY, Plaintiff-Appellant,
v.
Jo Anne B. BARNHART, Commissioner, Social Security Administration, Defendant-Appellee.
No. 03-7129.

Feb. 4, 2005.

Background: Claimant sought judicial review after the Commissioner of Social Security denied her application for social security disability benefits and supplemental security income (SSI) benefits. The District Court upheld Commissioner's decision. Claimant appealed.

Holdings: The Court of Appeals, Holloway, Circuit Judge, held that:
(1) administrative law judge (ALJ) failed to follow correct legal standards in evaluating treating physician's medical opinion;
(2) ALJ committed clear legal error by failing to mention treating osteopath's reports and opinions and giving no reason for disregarding osteopath's opinion;
(3) ALJ had to consider and evaluate examining physician's opinion and give specific, legitimate reason for rejecting it; and
(4) ALJ had to explain weight given to, and reasons for rejecting, neurosurgeon's report.
Reversed and remanded with instructions.

West Headnotes

[1] Social Security and Public Welfare ☞143.65
356Ak143.65 Most Cited Cases
In deciding claimant's application for social security disability benefits and supplemental security income (SSI) benefits, administrative law judge (ALJ) could not discount treating physician's opinion of claimant's exertional and postural limitations based on speculative, unsupported assumption that opinion was based on claimant's own subjective reports of her

symptoms.  20 C.F.R. §§ 404.1527, 416.927.

[2] Social Security and Public Welfare ☞143.65
356Ak143.65 Most Cited Cases
After deciding that treating physician's opinion regarding claimant's exertional and postural limitations was not entitled to controlling weight, in proceedings on claimant's application for social security disability benefits and supplemental security income (SSI) benefits, administrative law judge (ALJ) could not reject opinion entirely, but rather was obligated to consider what lesser weight opinion should be given, using relevant factors set forth in regulations.  20 C.F.R. §§ 404.1527, 416.927.

[3] Social Security and Public Welfare ☞143.65
356Ak143.65 Most Cited Cases
In deciding claimant's application for social security disability benefits and supplemental security income (SSI) benefits, administrative law judge (ALJ) could not discount treating physician's opinion regarding claimant's exertional and postural limitations in favor of opinion of non-examining agency physician who filled out standardized checklist that provided no better explanation for basis for opinions contained therein than treating physician's discounted report.  20 C.F.R. §§ 404.1527, 416.927.

[4] Social Security and Public Welfare ☞149
356Ak149 Most Cited Cases
Failure of administrative law judge (ALJ) deciding claimant's application for social security disability benefits and supplemental security income (SSI) benefits to follow correct legal standards in evaluating treating physician's medical opinion, which undermined ALJ's assessment of claimant's ability to perform past relevant work or to do other jobs in national economy, necessitated remand for further proceedings.  20 C.F.R. §§ 404.1527, 416.927.

[5] Social Security and Public Welfare ☞142.10
356Ak142.10 Most Cited Cases
Administrative law judge (ALJ) deciding claimant's application for social security disability benefits and supplemental security income (SSI) benefits committed clear legal error by failing to mention treating osteopath's reports and opinions and giving no reason for disregarding osteopath's opinion in concluding that claimant was not disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).

[6] Social Security and Public Welfare ☞142.10
356Ak142.10 Most Cited Cases

121 Fed.Appx. 819
(Cite as: 121 Fed.Appx. 819)

Page 2

[6] Social Security and Public Welfare ☞143.65
356Ak143.65 Most Cited Cases
In deciding claimant's application for social security disability benefits and supplemental security income (SSI) benefits, administrative law judge (ALJ) was required to give consideration to examining physician's medical evidence, evaluate that evidence by applying relevant factors set forth in regulation, and give specific, legitimate reason for rejecting physician's opinion. 20 C.F.R.        § § 404.1527(d), 416.927(d).

[7] Social Security and Public Welfare ☞142.10
356Ak142.10 Most Cited Cases
Administrative law judge (ALJ) deciding claimant's application for social security disability benefits and supplemental security income (SSI) benefits had to explain weight assigned to report of neurosurgeon who evaluated claimant's suitability for pain management program, and to explain reasons for assigning such weight or rejecting opinion altogether. 20 C.F.R. §§ 404.1527, 416.927.

*821 Atherine C. Taylor, Jennifer L. Struble, Perrine McGivern Redemann Reid Berry & Taylor PLLC, Richard L. Peaster, Tulsa, OK, for Plaintiff-Appellant.

Sheldon J. Sperling, U.S. Attorney, Cheryl R. Triplett, Office of the United States Attorney Eastern District of Oklahoma, Muskogee, OK, Tina M. Waddell, Cicely S. Jefferson, Dianne Mullins Pryor, Michael McGaughran, Social Security Administration Office of the General Counsel, Dallas, TX, for Defendant-Appellee.

Before McCONNELL, HOLLOWAY, and PORFILIO, Circuit Judges.

ORDER AND JUDGMENT [FN*]

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

HOLLOWAY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f); 10th Cir. R.

34.1(G). The case is therefore ordered submitted without oral argument.

Claimant Joy Victory appeals the magistrate judge's order affirming the Commissioner's decision to deny her application for Social Security disability insurance and supplemental security income benefits. [FN1] Claimant contends on appeal that the administrative law judge (ALJ) did not properly evaluate the opinions of her treating physicians. We agree, and we reverse and remand for further proceedings.

FN1. The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c).

BACKGROUND
Claimant applied for benefits in 2000, alleging an inability to work since April 8, 1994, due to a herniated disc in her back, a neck fusion, and carpal tunnel syndrome. Following a work injury on April 8, 1994, claimant was diagnosed with disc derangement and spondylosis at three levels in her cervical spine, and a herniated disc. She underwent anterior diskectomy and fusion surgery in August 1995, and underwent another surgery for posterior fusion and posterior wiring in March 1996. [FN2] She continued to have problems with her lumbar *822 spine, and was again diagnosed with disc derangement in her lumbar spine. She has gone to pain management specialists and undergone epidural steroid injections and nerve block injections.

FN2. Claimant was last insured for disability benefits on June 30, 1997. See Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir.1993) (stating claimant must establish onset of disability prior to date insured status expired). There is no medical evidence in the record prior to June 30, 1997 other than one report from Dr. Billings. To receive supplement security income benefits, which claimant also seeks, however, she must prove only that she has become disabled. See Kepler v. Chater, 68 F.3d 387, 389 (10th Cir.1995).

After an administrative hearing at which a vocational expert (VE) testified, the ALJ determined that claimant was not disabled at step four of the five-step sequential evaluation process, see Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir.1988), because she had the residual functional capacity (RFC) to perform a narrow range of light work, and could, therefore, return to her past relevant work as a waitress. The ALJ also determined, in the alternative at step five, that she had the RFC to perform work that was available in the national economy.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

121 Fed.Appx. 819
(Cite as: 121 Fed.Appx. 819, *822)

Page 3

This court reviews "the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir.2003). Claimant contends that the ALJ failed to follow correct legal standards in evaluating the reports and opinions from her treating physicians. She argues the ALJ made only selective use of the reports from Drs. Billings and Covington, completely ignored the opinions of Drs. Trinidad and Hale, and failed to explain what weight, if any, he afforded these reports. The magistrate judge rejected these claims, stating that the ALJ thoroughly reviewed the medical opinions of Drs. Billings, Covington, and Hale. We find no record support for the magistrate judge's conclusion and agree with claimant that the ALJ failed to apply correct legal standards in evaluating the opinion of her treating and examining physicians.

### TREATING PHYSICIAN RULE

"According to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir.2004) (citing 20 C.F.R. § 404.1527(d)(2)). "In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.' " *Watkins*, 350 F.3d at 1300. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) "consistent with other substantial evidence in the record." (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

Even if a treating physician's opinion is not entitled to controlling weight, however, " '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.' " *Id.* (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4). Those factors are:
(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a

specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (quotation omitted);   *see* 20 C.F.R. §§ 404.1527 and 416.927. After *823 considering these factors, "the ALJ must give good reasons in [the] ... decision for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301 (quotation omitted). "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* (quotations omitted).

**A.** *Dr. Covington.* In reaching his determination that claimant has the RFC to return to her past relevant work as a waitress or to perform other work available in the national economy, the ALJ rejected an opinion from one of claimant's treating physicians, Dr. Covington, with respect to her exertional limitations and physical abilities, and accepted, instead, the opinion of a non-examining state agency physician regarding her exertional limitations. Dr. Covington is a neurosurgeon who examined claimant in March, April, and August 1998, and on March 22, 2001, and received reports throughout 1998 to 2001 from medical specialists to whom he referred her with respect to her medical condition.

On April 3, 2001, Dr. Covington completed a Physician Statement of Physical Abilities, in which he indicated on a checklist that claimant could sit, stand, or walk for only a total of one-to-three hours in an eight-hour workday; could only lift and carry up to ten pounds occasionally; could never push, pull, squat, twist, climb, balance, stoop, kneel, or crawl; could only occasionally reach, and could not use her hands repetitively for simple or firm grasping, fine manipulation, or use of vibrating tools.   *See* Aplt.App. at 130. If Dr. Covington's opinion as to claimant's exertional and postural limitations is accurate, claimant is incapable of doing sedentary work, which generally requires sitting for a total of six hours in an eight-hour workday.   *See* SSR 96-9p, 1996 WL 374185, at *3, *6 (July 2, 1996). This would be contrary to the ALJ's finding at step four that claimant is capable of performing her past relevant work as a waitress, which the VE characterized as a light exertional-level job, and his finding at step five that she could perform sedentary work with frequent use of her hands for fine manipulation. *See Williams*,   844 F.2d at 751 (explaining that the burden at step five is on Commissioner to show that claimant retains the RFC to perform specific jobs that exist in the national

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

economy).

The ALJ rejected Dr. Covington's opinion, however, and never included the exertional and postural limitations he described in the hypothetical questions the ALJ posed to the VE. The ALJ stated that Dr. Covington's April 3, 2001 statement was brief and conclusory and provided very little explanation of the evidence he relied upon in forming this opinion. The ALJ concluded that Dr. Covington must have relied quite heavily upon claimant's subjective complaints. Instead, the ALJ relied upon a standardized checklist of exertional and postural limitations prepared by a state agency physician, Dr. Woodcock, who reviewed claimant's medical file, but apparently never examined her.

[1] The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption. *See Langley*, 373 F.3d at 1121 (holding that ALJ may not reject a treating physician's opinion based on speculation). We find no support in the record for the ALJ's conclusion. Nothing in Dr. Covington's report indicates that he based his opinion on claimant's subjective complaints, and the ALJ's finding ignores all of Dr. Covington's examinations, medical tests, and reports. Indeed, the ALJ's discussion of Dr. Covington omits entirely his *824 March 22, 2001 examination and report. [FN3] His April 3, 2001 statement might well have been based on his recent first-hand examination and observation of claimant during this examination, performed less than two weeks earlier, rather than on claimant's subjective complaints, as the ALJ speculated. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.2000) (noting that the treating physician's opinion may "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time").

> FN3. The Commissioner erroneously argues, as she did before the district court, that Dr. Covington's April 3, 2001 statement should not be given weight because he had not examined claimant since August 1998. This statement is not accurate, because the record includes Dr. Covington's March 22, 2001 examination of claimant, *see* Aplt.App. at 134, a fact the Commissioner elsewhere acknowledged in her recitation of the facts, *compare* Aplee. Br. at 21 *with* 8.

[2] Nevertheless, even assuming that the ALJ properly concluded that Dr. Covington's statement regarding claimant's exertional and postural

limitations was not well-supported, and therefore was not entitled to controlling weight, the ALJ was not entitled to completely reject his opinion on this basis alone; rather, he was obligated to consider what lesser weight the opinion should be given, using all of the relevant factors set forth in sections 404.1527 and 416.927. *See Watkins*, 350 F.3d at 1300. The ALJ failed to do so; he never addressed in his decision whether the opinion was entitled to less-than-controlling weight, and he never discussed any of the factors set forth in sections 404.1527 and 416.927. *See Langley*, 373 F.3d at 1120 (finding improper evaluation of treating physician opinion where ALJ failed to consider what lesser weight to give opinion and failed to discuss the relevant factors).

[3][4] Compounding this error, the ALJ improperly discounted Dr. Covington's opinion about claimant's limitations in favor of the opinion of Dr. Woodcock, a non-examining agency physician, who filled out a standardized checklist that provided no better explanation for the basis of the opinions contained therein than Dr. Covington's April 3, 2001 statement. "[T]he opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant." *Williams*, 844 F.2d at 757;   *see also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir.2004) ("[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all."). The ALJ's task is to examine a non-examining physician's report "to see if it outweighs the treating physician's report, not the other way around." *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir.1988) (quotation omitted). Here, the ALJ gave no reason for rejecting the treating-physician opinion of Dr. Covington in favor of Dr. Woodcock's opinion. Because the ALJ failed to follow the correct legal standards in evaluating Dr. Covington's opinion, which undermines the ALJ's assessment of claimant's ability to perform either her past relevant work or to do other jobs that exist in the national economy, we must remand for further proceedings.

[5] B. *Dr. Hale*. Dr. Hale is an osteopath to whom Dr. Covington referred claimant for pain management and other treatment. Dr. Hale examined claimant in April, July and November 1998, February and March 1999, and May 2001. The administrative *825 record includes six detailed reports from Dr. Hale describing

121 Fed.Appx. 819
(Cite as: 121 Fed.Appx. 819, *825)

Page 5

his examination and treatment of claimant. He diagnosed her with significant degenerative disc disease, limited mobility in her neck and chronic neck pain, and carpal tunnel syndrome. He performed cervical and lumbar discogram diagnostic tests on claimant, prescribed pain medication for her, and gave her epidural steroid injections. Inexplicably, the ALJ's decision makes no mention whatsoever of Dr. Hale's reports or opinions, and gave no reason for disregarding his opinion. [FN4] This was, of course, clear legal error. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d) ( "Regardless of its source, we will evaluate every medical opinion we receive"); SSR 96-5P, 1996 WL 374183, at *1 ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored."); *see also Watkins*, 350 F.3d at 1301 (repeating well-established rule that treating physician's opinion may be disregarded only if specific, legitimate reasons are given); *Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir.1988) ( "An ALJ may not ignore the evidence and make no findings."). The ALJ's failure to give any consideration to Dr. Hale's medical evidence, to evaluate this evidence by applying the relevant factors to be used in weighing a medical opinion, and to give any specific, legitimate reason for rejecting his opinion was contrary to the requirements of the governing regulations, sections 404.1527(d) and 416.927(d). On remand, the ALJ must consider Dr. Hale's evidence in accordance with the correct legal standards.

> FN4. The ALJ did incorrectly attribute one of Dr. Hale's treatment records to Dr. Covington, but this does not demonstrate, as the magistrate judge concluded, that the ALJ considered Dr. Hale's reports and opinions in accordance with the requirements of sections 404.1527(d) and 416.927(d)
> .

[6] C. *Dr. Trinidad.* Dr. Trinidad is an osteopath to whom Dr. Covington referred claimant for examination. He examined claimant only once, on February 16, 2000, and performed range-of-motion and neurological tests on her. He concluded that claimant is permanently and totally disabled. The ALJ made no mention whatsoever of Dr. Trinidad's examination and report in his decision.

"[T]he opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating

physician's opinion." *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir.2003). Nevertheless, "[e]ven though Dr. [Trinidad] was not a treating physician, the ALJ was still required to consider his opinion, ... and to provide specific, legitimate reasons for rejecting it." *Id.* at 764 (citing § 416.927(d) and SSR 96-5P, 1996 WL 374183, at *1). Again, the ALJ's failure to give any consideration to Dr. Trinidad's medical evidence, to evaluate his evidence by applying the relevant factors to be used in weighing a medical opinion, and to give any specific, legitimate reason for rejecting his opinion was contrary to the requirements of the governing regulations. *See* §§ 404.1527(d) and 416.927(d).

[7] D. *Dr. Billings.* On June 30, 1997, claimant saw Dr. Billings, a neurosurgeon who performed her first surgical procedure, for evaluation of her suitability for a pain management program. Claimant asserts that the ALJ seemed to place more weight on Dr. Billings' observation that she was able to walk quickly and briskly without difficulty than on his diagnosis that she had a back injury. The ALJ did describe Dr. Billings' report, but he "failed to articulate the weight, if any, he gave Dr. [Billings'] opinion, and he *826 failed also to explain the reasons for assigning that weight or for rejecting the opinion altogether." *Watkins*, 350 F.3d at 1301. On remand, the ALJ must explain the weight he assigns to this medical evidence in accordance with the governing regulations.

The judgment of the district court is REVERSED and REMANDED to the district court with instructions to remand the case to the Commissioner for further proceedings in accordance with this decision.

Briefs and Other Related Documents (Back to top)

. 2004 WL 1431812 (Appellate Brief) Brief for the Appellee (Apr. 09, 2004)Original Image of this Document (PDF)

. 2004 WL 3540804 (Appellate Brief) Appellant Joy Victory Brief (Mar. 08, 2004)Original Image of this Document with Appendix (PDF)

. 03-7129 (Docket)
(Dec. 19, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.